## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **NO: 6:20-CV- 00464** |
| | § | |
| **$567,327.00 IN UNITED STATES** | § | |
| **CURRENCY,** | § | |
| **Defendant.** | § | |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

In accordance with Fed. R. Civ. P. Supplemental Rule G(2), the United

States of America, Plaintiff, brings this complaint for forfeiture and alleges as

follows:

### NATURE OF THE ACTION

1.     This is an *in rem* action to forfeit property to the United States

pursuant to violations of 18 U.S.C. §§ 641, 1028A, 1956, and 1957.

### JURISDICTION AND VENUE

2.     The Court has subject matter jurisdiction over an action

commenced by the United States pursuant to 28 U.S.C. § 1345 and over an

action for forfeiture pursuant to 28 U.S.C. § 1355(a).

3.     The Court has *in rem* jurisdiction over the defendant property

pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to

the forfeiture occurred in the Eastern District of Texas.

4.      Venue is proper pursuant to 28 U.S.C. §1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in the Eastern District of Texas.

## DEFENDANT IN REM

5.      The following property constitutes the Defendant Property:

a.      $507,200.00 seized from Bank of America Hold Harmless Area;

b.      $60,127.00 seized from Bank of America Hold Harmless Area;

(collectively, "Defendant Property").  The Defendant Property was seized on June 15, 2020, in Newark, Delaware, pursuant to Federal law.

## BASIS FOR FORFEITURE

6.      The Defendant Property is subject to forfeiture pursuant to the following statutes:

a.      18 U.S.C. § 981(a)(1)(A) because it constitutes property involved in a violation of 18 U.S.C. §§ 1956 and 1957, or is property traceable to such property, and

b.      18 U.S.C. § 981(a)(1)(C) because it is property, real or personal, constituting or derived from proceeds traceable to a violation of 18 U.S.C. § 641.

## FACTS

7.      During the 2019 processing year, the Internal Revenue Service

(IRS) uncovered a tax fraud scheme that appeared to involve the laundering

of illegally obtained proceeds. The scheme was identified when several

returns with a combination of odd characteristics were filed.  Furthermore,

several taxpayers subsequently filed identity theft affidavits and tax returns

with the IRS.  This fact led to the conclusion that the taxpayers' PII had been

illegally obtained and misused.  In total, more than 3,000 fraudulent returns

were identified in this scheme.

8.      The facts and circumstances supporting the forfeiture of the

above-described defendant property are contained in the Affidavit of IRS

Special Agent Ryan Reynolds, which is attached hereto and incorporated

herein by reference.

## POTENTIAL CLAIMANTS

9.      Potential claimant to the Defendant Property may include:

Bank of America, NA
800 Samoset Drive, DE5-024-02-08
Newark, Delaware 19713

## CLAIM FOR RELIEF

10.     The United States respectfully requests that the Court forfeit the

Defendant Property to the United States, award costs and disbursements in

this action to the United States, and order any other relief that the Court

deems appropriate.

Respectfully Submitted,

STEPHEN J. COX
UNITED STATES ATTORNEY

*/s/   Robert Austin Wells*
ROBERT AUSTIN WELLS
Assistant United States Attorney
Texas State Bar No. 24033327
110 N. College, Suite 700
Tyler, Texas  75702
Tel:   (903) 590-1400
Fax:  (903) 590-1437
Email: robert.wells3@usdoj.gov

## **VERIFICATION PURSUANT TO 28 U.S.C. § 1746**

I, Ryan S. Reynolds, hereby state that:

1.      I am a Special Agent with Internal Revenue Service – Criminal Investigation.

2.      I have read this Complaint, and the information contained herein is true and correct to the best of my knowledge.

3.      The information contained in this Complaint comes from the official files and records of the United States, statements from other law enforcement officers, and my investigation of this case.

I state and verify under penalty of perjury that the foregoing is true and correct.

*Ryan S. Reynolds*
Ryan S. Reynolds, Special Agent
Internal Revenue Service
Criminal Investigations

August 20, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO: 6:20-CV- 00464 |
| | § | |
| $567,327.00 IN UNITED STATES | § | |
| CURRENCY | § | |
| Defendant. | § | |

## **AFFIDAVIT IN SUPPORT OF COMPLAINT FOR FORFEITURE**

I, Ryan S. Reynolds, after being duly sworn, depose and state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with the Internal Revenue Service-Criminal

Investigation (IRS-CI).  I am stationed in Tyler, Texas, and have been a Special Agent for

over fifteen years.  I have personally conducted or assisted in investigations of criminal

offenses under Titles 18, 21, 26, and 31 of the United States Code.  This work has

included the gathering of evidence to obtain search and seizure warrants in connection

with the investigation of federal offenses including: theft of government funds, in

violation of 18 U.S.C. §641; identity theft, in violation of 18 U.S.C. § 1028A; and money

laundering, in violation of 18 U.S.C. §§ 1956, and 1957.

2.      The statements contained in this affidavit are based in part upon my

experience, my knowledge of the facts and circumstances surrounding this investigation,

and on information provided to me by other law enforcement personnel and other witnesses.

## **PROPERTY FOR FORFEITURE**

3.      This Affidavit is made in support of a civil forfeiture complaint concerning the following personal property: $567,327.00 seized from Bank of America Hold Harmless Area, seized on June 15, 2020, in Newark, Delaware, pursuant to Federal law.

## **LEGAL AUTHORITY FOR FORFEITURE**

4.      The funds to be forfeited represent proceeds of an identity theft fraud scheme.  Personally identifiable information (PII) belonging to the victims of the identity theft fraud scheme was stolen. Then, fraudulent federal income tax returns were filed in the victims' names, with the resulting income tax refunds being deposited into bank accounts across the country.

5.      I believe the above-listed property is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) because the property was involved in or traceable to property involved in money laundering in violation of 18 U.S.C §§ 1956 or 1957, or constitutes proceeds from a specified unlawful activity (as defined in 18 U.S.C. § 1956(c)(7).

6.      18 U.S.C. § 1956 (a)(1) makes it a crime to knowingly conduct or attempt to conduct a "financial transaction" with proceeds from "specified unlawful activity" (SUA) with specific intent to: promote the SUA, conceal or disguise the source, origin,

*Affidavit – Page 2*

nature, ownership, or control of the proceeds; evade reporting requirements; or evade

taxes.

7.      The purpose of "money laundering" as defined by 18 U.S.C. § 1956 is to

disguise illicit nature of funds by introducing it into legitimate commerce and finance

thereby making them "clean."  This financial process is most commonly conducted using

three steps referred to as "placement," "layering," and "integration."  Typically, the

"placement" phase of this financial process takes place when proceeds from illicit sources

are placed in a financial institution or business entity.  "Layering" takes place when these

funds are then used in seemingly legitimate commerce transactions which makes the

tracing of these monies more difficult and removed from the criminal activity from which

they are a source.  Finally, the "integration" phase is when these funds are then used to

promote the unlawful activity or for the personal benefit of the money launderers and

others.

8.      I also have probable cause to believe that this property is subject to

forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) because the property

constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 641 or a

conspiracy to commit such offense.  18 U.S.C. § 641 is a "specified unlawful activity"

according to 18 U.S.C. § 1956(c)(7), which means that any property, real or personal,

which constitutes proceeds or is derived from proceeds traceable to a violation of 18

U.S.C. § 641 or a conspiracy to commit such is subject to forfeiture pursuant to 18 U.S.C.

§ 981(a)(1)(C).

**Affidavit – Page 3**

9.     Under 18 U.S.C. § 984, for any forfeiture action in rem in which the subject property consists of cash, monetary instruments in bearer form, or funds deposited in an account in a financial institution:

a.     The government need not identify the specific funds involved in the offense that serves as the basis for the forfeiture;

b.     It is not a defense that those funds have been removed and replaced by other funds; and

c.     Identical funds found in the same account as those involved in the offense serving as the basis for the forfeiture are subject to forfeiture.

10.    In essence, 18 U.S.C. § 984 allows the government to seize for forfeiture identical property found in the same place where the "guilty" property had been kept.

## FACTS SUPPORTING FORFEITURE

11.    The United States is investigating a stolen identity refund fraud (SIRF) scheme.  The investigation concerns possible violations of, inter alia, 18 U.S.C. § 641 (Theft of Government Funds), 18 U.S.C. § 1028A (Aggravated Identity Theft) and 18 U.S.C. §§ 1956 and 1957 (Laundering of Monetary Instruments).

12.    The case involves the laundering of proceeds obtained from the filing of fraudulent tax returns utilizing illegally obtained PII.

13.    In May 2019, IRS-CI uncovered the scheme and identified a total of 3,112 fraudulent returns filed within the scheme during the 2019 tax season (processing returns

**Affidavit – Page 4**

for the 2018 tax year).  Returns associated with this scheme showed the following

characteristics:

> a.  $0 wages and withholding;
> b.  No refundable credits were claimed;
> c.  No schedules were attached;
> d.  Estimated tax payments between $4 and $50;
> e.  Refunds claimed between $4 and $50; and
> f.  Returns were filed online.

14.    The filing of the fraudulent tax returns caused the IRS to refund estimated

tax payments the legitimate taxpayer had made throughout the year.  However, the

refunds were directed to the bank accounts listed on the fraudulent tax returns.  Of the

3,112 returns filed in this scheme, 1,503 resulted in a loss to the IRS.  The total initial

loss to the IRS was $16,848,599.

15.    Tax refunds from the IRS are processed through the Federal Reserve

Automated Clearinghouse (ACH), which processes payment transactions over an

electronic network that connects all twelve Federal Reserve Banks.  In order for the

Federal Reserve to process ACH payments, the ACH transaction messages are routed

over the network through the Federal Reserve's processing site in New Jersey.  The

Federal Reserve subsequently routes the transaction messages to the receiving bank's

terminal.  Thus, any ACH payment sent to or from a state other than New Jersey would

involve interstate transmissions.

16.    On or about April 9, 2019, a U.S. Individual Income Tax Return was

electronically filed with the Internal Revenue Service (IRS) for a taxpayer hereafter

identified as "TP-1."  The tax return contained various fields of PII including TP-1's name, social security number, address in New York, and date of birth.  The tax return listed no income, the standard deduction for a single taxpayer, estimated payments of six dollars, and a refund due of six dollars.  The tax return directed the refund due of six dollars to bank routing number 063100277 and checking account ending in ****6578.

17.     ACH Routing number 063100277 was assigned to Bank of America. The checking account ending in ****6578 at Bank of America was opened on or about March 25, 2019, with the account title of an LLC domiciled in Florida.  The sole signatory on the account was not TP-1.

18.     When the electronic tax return mentioned in paragraph 16 was filed, TP-1's individual IRS account for tax year 2018 contained a $60,187.00 credit balance.  Based on the filing of the return, the Internal Revenue Service released the credit balance to the bank account listed on the return.  Consequently, on or about April 24, 2019, the U.S. Treasury deposited $60,187.00 into Bank of America checking account ending in ****6578.

19.     On or about May 29, 2019, the IRS received an Identity Theft Affidavit from TP-1.  The Affidavit stated that TP-1 received a notice from the IRS indicating that TP-1's 2018 tax return had been adjusted.  TP-1 stated in the Affidavit that TP-1 had not yet filed a 2018 tax return.

20.     Investigators with Bank of America identified the funds as being fraudulently obtained.  On or about June 7, 2019, Bank of America removed the

**Affidavit – Page 6**

remaining funds ($60,127.00) from Bank of America checking account ending in ****6578 and placed the funds in the Hold Harmless Area.  On May 7, 2020, the IRS confirmed with an associate at Bank of America that the funds were still being held in the Hold Harmless Area.

21.     On or about April 3, 2019, a joint U.S. Individual Income Tax Return was electronically filed with the IRS for taxpayers herein after referred to as "TP-2."  The tax return contained various fields of PII including the TP-2's names, social security numbers, address in New York, and dates of birth.  The return also listed the names and social security numbers of TP-2's three children.  The tax return listed no income, the standard deduction for a joint tax return, estimated payments of thirty dollars, and a refund due of thirty dollars.  The tax return directed the refund due of thirty dollars to bank routing number 081904808 and checking account ending in ****1928.

22.     ACH Routing number 081904808 was assigned to Bank of America. The checking account ending in ****1928 at Bank of America  was opened on or about September 27, 2018, with the account title of a corporation domiciled in Florida.  The sole signatory on the account was not TP-2.

23.     When the electronic tax return mentioned in paragraph 21 was filed, TP-2's IRS account for tax year 2018 contained a $507,200.00 credit balance.  Based on the filing of the return, the IRS released the credit balance to the bank account listed on the return. Consequently, on or about April 24, 2019, the U.S. Treasury deposited $507,200.00 into Bank of America checking account ending in ****1928.

**Affidavit – Page 7**

24. Investigators with Bank of America identified the funds as being fraudulently obtained. On or about May 3, 2019, Bank of America removed the funds ($507,200.00) from the account ending in ****1928 and placed the funds in Bank of America's Hold Harmless Area.

25. On or about October 28, 2019, the IRS received a paper 2018 tax return for the TP-2. The paper tax return appeared to be legitimate because it contained income and deductions proportionate to the amount of estimated payments on file with the IRS, claimed the correct amount of estimated payments, and was prepared by a certified public accountant.

26. On April 30, 2020, the IRS confirmed with an associate at Bank of America that the funds removed from Bank of America checking account ending in ****1928 were still being held in the Hold Harmless Area.

27. The Bank of America Hold Harmless Area contained at least $567,327.00 in fraudulently obtained funds. Those funds being the total of $60,127.00 from Bank of America checking account ending in ****6578 and $507,200.00 from Bank of America checking account ending in ****1928. On or about June 15, 2020, IRS-CI seized $567,327.00 from Bank of America pursuant to Federal law.

## **CONCLUSION**

28. I submit that this affidavit supports probable cause for a warrant to forfeit all funds, monies, and other things of value up to $567,327.00 seized from Bank of America.

**Affidavit – Page 8**

29.     Based on my experience and the information herein, I have probable cause to believe that the seized $567,327.00 constitutes proceeds from a specified unlawful activity (as defined in 18 U.S.C. § 1956(c)(7) and 18 U.S.C. § 1961(1)), are traceable to a money laundering transaction and are therefore subject to forfeiture pursuant to pursuant to 18 U.S.C. § 981(a)(1)(A).

30.     I also have probable cause to believe that the seized $567,327.00 constitutes proceeds traceable to a violation of 18 U.S.C. § 641 or a conspiracy to commit such offense and are therefore is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

As provided in 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

*Ryan S. Reynolds*
Ryan S. Reynolds, Special Agent
Internal Revenue Service
Criminal Investigations

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 6:20-cv-00464 |
| | § | |
| $567,327.00 IN UNITED STATES | § | |
| CURRENCY, | § | |
| Defendant. | § | |

## ORDER FOR WARRANT OF ARREST IN REM

TO:   The Clerk of the Court, United States District Court for the Eastern District of Texas

WHEREAS, on August 20, 2020, the United States of America filed a verified complaint for civil forfeiture in the United States District Court for the Eastern District of Texas against the following defendant property:

a.  $507,200.00 seized from Bank of America Hold Harmless Area;

b.  $60,127.00 seized from Bank of America Hold Harmless Area;

(collectively, "Defendant Property") alleging that the property is subject to seizure and civil forfeiture to the United States for the reasons alleged in the complaint; and

WHEREAS, the Court, having reviewed the Complaint and the Government's Application for Warrant of Arrest in Rem, finds, the defendant property is currently in the possession, custody, or control of the United States; and

WHEREAS, Supplemental Rule G(3)(b)(i) provides that the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control;

**Order for Warrant of Arrest in Rem - Page 1 of 2**

YOU ARE, THEREFORE, HEREBY COMMANDED to issue an arrest warrant in rem for the defendant property pursuant to Supplemental Rule G(3)(b)(i); and

YOU ARE FURTHER COMMANDED to deliver the arrest warrant in rem to a person or organization authorized to execute it who may be a marshal or any other United States officer or employee, someone under contract with the United States, or someone specially appointed by the Court for that purpose, pursuant to Supplemental Rule G(3)(c)(i).

IT IS SO ORDERED,

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 6:20-cv-00464 |
| | § | |
| $567,327.00 IN UNITED STATES | § | |
| CURRENCY, | § | |
| Defendant. | § | |

## WARRANT OF ARREST IN REM

TO:   The United States Internal Revenue Service for the Eastern District of Texas and/or any other United States officer or employee, someone under contract with the United States, or someone specially appointed by the court.

On August 20, 2020, the United States filed a verified complaint for civil forfeiture in the United States District Court for the Eastern District of Texas against the following property:

a.      $507,200.00 seized from Bank of America Hold Harmless Area;

b.      $60,127.00 seized from Bank of America Hold Harmless Area;

(collectively, 'Defendant Property') alleging that the property is subject to seizure and forfeiture to the United States for the reasons alleged in the complaint.

The defendant property is currently in the possession, custody, or control of the United States.

In these circumstances, Supplemental Rule G(3)(b)(i) directs the Clerk of the Court to issue an arrest warrant in rem for the defendant property.

**Warrant of Arrest in Rem – Page 1 of 2**

Supplemental Rule G(3)(c)(i) provides that the warrant of arrest in rem must be delivered to a person or organization authorized to execute it who may be a marshal or any other United States officer or employee, someone under contract with the United States, or someone specially appointed by the court for that purpose.

YOU ARE COMMANDED to do the following:

1.      To arrest the defendant property as soon as practicable by serving a copy of this warrant on the custodian in whose possession, custody or control the property is presently found, and to use whatever means may be appropriate to protect and maintain it in your custody until further order of this Court.

2.      Promptly after execution of this process, to file the same in this Court with your return thereon, identifying the individual(s) upon whom copies were served and the manner employed.

Dated:

DAVID O'TOOLE
Clerk of the Court
United States District Court for the
Eastern District of Texas


By:     _____
        Deputy Clerk

# CIVIL COVER SHEET

JS 44 (Rev. 11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
$567,327.00 in United States currency

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Smith
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Robert A. Wells, USAO, 101 N. College, Suite 700
Tyler, Texas 75702 (903) 590-1400

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

(Nature of suit checklist — various categories: CONTRACT, TORTS, FORFEITURE/PENALTY, BANKRUPTCY, OTHER STATUTES, REAL PROPERTY, CIVIL RIGHTS, PRISONER PETITIONS, LABOR, SOCIAL SECURITY, FEDERAL TAX SUITS. ☒ 690 Other checked.)

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
This is an in rem civil forfeiture proceeding pursuant to 18 USC 981
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
JUDGE   DOCKET NUMBER

DATE 08/20/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ Robert Austin Wells

FOR OFFICE USE ONLY
RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE